IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Tyrone Ragland, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15cv1663 (LMB/TCB) |
| | ) | |
| S. Lee, et al., | ) | |
|     Defendants. | ) | |

MEMORANDUM OPINION

Tyrone Ragland, a Virginia inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, alleging that his right to due process was violated in connection with institutional disciplinary proceedings during his former incarceration at Powhatan Correctional Center ("PCC"). Before this Court is a motion for summary judgment filed jointly by the defendants. (Dkt. No. 17)

I. Background

The following material facts are uncontroverted. A search of plaintiff's cell at PCC on August 5, 2014 revealed cell phones, tobacco products and a weapon. Dillman Aff. ¶ 4. The items were confiscated and plaintiff was issued disciplinary charges for the contraband and confined to pre-hearing detention pending the outcome of the disciplinary proceedings. Id.[1] Plaintiff was found guilty of the charges on August 12, 2014, and was penalized with 25 days segregation and a loss of 30 days good time credits for possession of several cell phones, a $12 fine for possession of tobacco, and 20 days segregation for possession of a weapon. Id. ¶ 5. He

---

[1] Pre-hearing detention is used when an offender is charged with a disciplinary violation, awaiting a hearing, and considered to be a potential threat to person or property. Dillman Aff. ¶ 4, Enc. A.

1

received credit for the time he spent in pre-hearing detention. Id. On August 26, 2014, plaintiff was released from segregation and transferred to a general population housing assignment at Sussex I State Prison. Id.

The Virginia Department of Correction ("VDOC") conducts an institutional review of every disciplinary hearing report to ensure that proper procedures were followed and the assessed penalty was appropriate. Dillman Aff. ¶ 6. Major Russell conducted the institutional review of plaintiff's hearing on August 19, 2014, and approved the offense report. Id. The disciplinary offense report and attachments were then provided to plaintiff, who indicated with his signature that he received them. Id., Enc. C - E.

Ragland submitted a disciplinary appeal to Warden Dillman on September 12, 2014, requesting dismissal and expungement of the charges on several bases: (1) no pre-hearing detention form was attached to the disciplinary offense report; (2) he was not provided with an advisor within 48 hours of requesting one, and by the time he saw an advisor it was "too late" to gather the statements and documents he needed to present his defense; (3) he was not properly notified of the confiscation of the communication device that was seized from him; (4) he was denied documentary evidence when his request that the hearing officers refused to view recordings on the Casio watch that was seized from him, which would have shown that it was "simply a watch" and not a communications device; (5) the cell phones that were confiscated belonged to his cell partner, who reneged on a promise to claim their ownership; and (6) further investigation would have shown that the cell phones were in his cell partner's foot locker. Dillman Aff., Enc. C, Disciplinary Appeal.

By a letter dated October 7, 2014, Warden Dillman informed plaintiff that he found no

procedural errors in the disciplinary process and upheld the result. Specifically, he determined: (1) the hearing was conducted in accordance with OP 861.1, and review of the tape confirmed that plaintiff was afforded all due process rights; (2) contrary to plaintiff's claim, the pre-hearing detention box was not checked on the disciplinary offense report; (3) plaintiff's argument that the protocol set out at OP 830.1 should have been followed was incorrect, as the established protocol of OP 861.1 was followed and plaintiff received due process; (4) plaintiff agreed at the hearing that he was provided with copies of the charge, and his subsequent claim that he did not receive the rest of the forms was not supported by sufficient evidence; (5) plaintiff acknowledged at the hearing that he had had enough time to confer with an advisor; (6) plaintiff was not issued a confiscation sheet because he challenged ownership of the cell phone and because the phone was neither state-issued nor personal property; (7) plaintiff's documentary evidence request was denied pursuant to OP 861.1, which states that each offender assigned to a double cell is individually responsible for anything found on his person or in his locker, while both offenders are jointly responsible and may be charged for contraband found in the common areas of the cell, unless one offender claims responsibility for the contraband or reliable evidence links one offender to the item; and (8) plaintiff's argument that he was not given the opportunity to establish which locker was his was addressed in number (7). Dillman Aff., Enc. C, Letter of 10/7/2014.

Plaintiff appealed Warden Dillman's decision to VDOC's Central Region office. By a letter dated November 18, 2014, Regional Administrator Wendy Hobbs found no serious procedural errors and upheld the charge. Specifically, she determined: (1) it was acknowledged that the Facility Unit Head overlooked plaintiff's pre-hearing detention status, but the error was

not one that affected the formulation of a defense in his appeal, and the fact that plaintiff's placement in pre-hearing detention was documented correctly in VACORIS (i.e., the Virginia Corrections Information System) satisfied the authorization form requirement; (2) plaintiff's contention that he was not provided with forms was undermined by records demonstrating that he "never had trouble procuring such forms previously," they are readily available upon request anywhere in his facility, and the responsibility is left to the offender to procure the assistance of an advisor by "simply ... request[ing] it from staff;" (3) the fact that plaintiff did not receive a confiscation form was in accord with OP 861.1 §VIII (F)(3), because the cell phones were not his personal property as he was not allowed to possess them; (4) plaintiff was not allowed to have the watch present at the hearing because confiscated property is deemed to be a security risk, and although the watch initially was erroneously believed to be a communications device, that error was harmless because the charge also rested on the fact that plaintiff had a total of five cell phones in his possession; and (5) plaintiff's notarized statement saying the cell phone was not his was disallowed because "[a]s a practice of fairness and safety, no other testimony of parties made after a preliminary contact are to be used, as such testimonies could have been produced by bribery, forceful coercion, or other unjust means," and the cell phones were determined to be in his direct possession rather than that of his cellmate because they were in plaintiff's locker. Dillman Aff., Enc. C, Letter of 11/18/2014.

Plaintiff then turned to the federal forum and filed the instant action pursuant to 42 U.S.C. §1983, seeking monetary damages and expungement of the disciplinary charges. Plaintiff

names as defendants Correctional Officer S. Lee,[2] Warden Dillman, and Charlene Davis,[3] and asserts claims that: (1) defendants Dillman and Davis moved him from general population to pre-hearing segregation without due process; and (2) all of the defendants deprived him of due process by failing to provide him with an advisor to assist him at the disciplinary hearing in a timely manner. In support of their motion for summary judgment on these claims, defendants submitted a supporting memorandum of law and exhibits, and advised plaintiff of his right to file responsive materials, as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Civil Rule 7(K). Plaintiff has filed a declaration and an affidavit with exhibits opposing defendant's motion. (Dkt. No. 20-21) Accordingly, this matter is ripe for disposition.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create

---

[2]Officer Lee served and witnessed the initial Disciplinary Offense Report. Dillman Aff., Enc. C.

[3]Charlene Davis signed the letter rejecting plaintiff's appeal on behalf of Regional Administrator Wendy Hobbs. Dillman Aff., Enc. C, Letter of 11/18/2014.

disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

A. <u>Plaintiff's Placement in Pre-Hearing Detention States No Claim for § 1983 Relief</u>

Plaintiff's claim that defendants Dillman and Davis violated his right to due process by moving him from general population to pre-hearing detention pending the outcome of the disciplinary proceedings states no claim for which § 1983 relief is available. When a defendant is lawfully convicted and confined to jail, he loses a significant interest in his liberty for the period of that sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Confinement does not strip inmates of all liberty interests, and the due process clause of the Fourteenth Amendment mandates procedural safeguards before an inmate can be punished by conditions dramatically

different from the basic range of constraints contemplated by his sentence, Sandin v. Conner, 515 U.S. 472, 483-84 (1995); however, as the Supreme Court recognized in Sandin, such liberty interests "will generally be limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause by its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. The protections of the due process clause do not attach unless the plaintiff was deprived of such a liberty interest. Lekas v. Briley, 405 F.3d 602, 607 (7th Cir. 2005).

In the wake of Sandin, most courts have concluded that "administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995), cert. denied, 517 U.S. 1196 (1996). Courts have held repeatedly that there is no liberty interest in remaining free from brief periods of disciplinary confinement. See, e.g., Frazier v. Coughlin, 81 F.3d 313, 317-18 (2d Cir. 1996) (twelve days in segregation unit); Walker v. Mahoney, 915 F.Supp. 548, 553-54 (E.D.N.Y. 1996) (twenty-three days in segregation); Wilson v. Harper, 949 F.Supp. 714 (S.D. Iowa 1996) (six months in disciplinary detention), and cases cited at 723. Here, plaintiff's confinement in pre-hearing detention for approximately a week did not amount to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," and so does not warrant constitutional protection. Accordingly, defendants are entitled to summary judgment on plaintiff's claim that his right to due process was violated by that temporary placement.

B. Plaintiff Received Due Process in the Disciplinary Proceeding

The Due Process Clause of the Fourteenth Amendment provides that no State shall

"deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. While it is well established that prisoners cannot be subjected to arbitrary discipline by prison officials, Howard v. Smyth, 365 F.2d 428 (4th Cir. 1966), prisoners' due process rights necessarily must be balanced against the interests of institutional security. Wolff v. McDonnell, 418 U.S. 539 (1974). Thus, an inmate at a disciplinary hearing is not entitled to the full panoply of rights accorded to a defendant at a criminal trial. Superintendent v. Hill, 472 U.S. 445, 454 (1985). Where, as here, a loss of statutory good-time credits or solitary confinement is at issue, due process requires that the inmate receive advance written notice of the charges, written findings, and when consistent with institutional safety and correctional goals, an opportunity to call witnesses and to present evidence in his defense. Wolff, 418 U.S. at 563-67. Importantly, however, prison inmates have no protected liberty interest in the disciplinary hearing "procedures themselves, only in the subject matter to which they are directed." Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993).

In this case, Ragland received all of the due process elements required by Wolff in connection with the disciplinary proceeding. His claim to the contrary centers specifically on the alleged fact that he was not provided with an advisor within 24 to 48 hours after he received the disciplinary charge. Compl. at handwritten p. 2. This claim fails for the following reasons.

First, it is uncontroverted that plaintiff did receive an advisor before the disciplinary hearing. In his affidavit opposing defendants' summary judgment motion, plaintiff states that he "saw and [sic] advisor 20 to 30 minutes before the hearings and was allowed to consult with him then." (Dkt. No. 21 at ¶ 22) Accordingly, plaintiff's claim when distilled to its essence concerns only the timing of his receipt of an advisor, rather than whether he received one at all.

8

Plaintiff relies on a provision of OP 861.1 which states that when an offender requests the services of an advisor to assist in preparing forms or considering a penalty offer, the serving officer must ensure that a staff or offender advisor is provided within 24 to 48 hours. Plaintiff's claim is not borne out by the record. The Disciplinary Offense Report served on plaintiff by defendant Lee indicates that plaintiff requested a staff or offender advisor to assist him at the disciplinary hearing (Dkt. No. 21, Ex. 4, id. ¶ 1), but it does not reflect that he requested an advisor to assist him in considering a penalty offer; instead, the boxes next to the statements "request the services of an advisor" and "advisor provided" as to his receipt of a penalty offer form are both left blank. (Id. ¶ 7). This evidence establishes that the time frame for providing an advisor required by the provision of OP 861.1 upon which plaintiff now relies was not triggered, as plaintiff apparently did not request an advisor to assist in considering a penalty offer.

Moreover, even were that not true, plaintiff fails to demonstrate how he was harmed by not being provided with an advisor in a more expeditious fashion. To support his argument, plaintiff claims that his right to present evidence in his defense as guaranteed by Wolff was abridged by the late appointment of an advisor, and that if he had been able to see an advisor more promptly he could have procured the testimony of an inmate to prove his innocence. The record indicates that another inmate named Darius Coleman, after the disciplinary hearing, filed an affidavit that a cell phone found inside plaintiff's locker actually belonged to him. Plaintiff attempted to rely on this affidavit during the appeal process. The affidavit was dated September 2, 2014 and stated:

> On the day of August 5, 2014, I left my telephone inside the locker of Tyrone Ragland. As I was in there looking at a movie on the phone with my friend Steffan Walker. They called for count and I hurriedly left the cell as Tyrone Ragland came back into the cell,

> normaly [sic] I would use the phone in that cell with my friend Steffan Walker. I wasn't going to say anything, but my conscious [sic] got to me as that was not fair of me to leave my stuff inside his locker without him knowingly allowing it. This statement is true and factual.

Assuming as plaintiff now argues that inmate Coleman would have been willing to subject himself to disciplinary charges by providing this statement at plaintiff's hearing, it would have made no difference because five cell phones were found in plaintiff's possession, four of which were discovered in a hidden compartment in his foot locker. Disciplinary Offense Report, "Description of Offense" at p. 2. Given that evidence, inmate Coleman's admission that one phone was his would have not have changed either the outcome of the disciplinary proceeding or the punishment plaintiff received. In the absence of a showing of harm, no due process violation has been demonstrated. See Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003) (potential due process violation held harmless where inmate could not explain how witness' live testimony at disciplinary hearing would have helped him).

### IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment will be granted, and summary final judgment will be entered in their favor. An appropriate Order and judgment shall issue.

Entered this  3rd  day of  November  2016.

/s/ 
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia